KAIN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 28. Argued September 11, 1970.—Decided October 6, 1970.*
(Also reported in 179 N. W. 2d 777.)

---

For the plaintiff in error there was a brief and oral argument by *Gordon Myse* of Appleton.

For the defendant in error there was a brief by *Robert W. Warren,* attorney general, and *Jeffrey B. Bartell,* assistant attorney general; the cause was argued by *Mary V. Bowman,* assistant attorney general.

ROBERT W. HANSEN, J. Postconviction counsel puts five arrows to the bow. One is aimed at a trial court ruling on admissibility of evidence. One aims at the testimony of the key prosecution witness. Three are directed to the conduct of the defense by trial counsel. Each misses its target.

*Marital privilege.*

Defendant, by postconviction counsel, asserts that the trial court admitted certain testimony of the wife of defendant in contravention of the limited marital privilege established by Wisconsin statute.[1] The wife's testimony was that her husband (1) was working for one Carley Schmidt; (2) was collecting unemployment insurance; and (3) had been laid off his regular employment in the fall of 1968. Objections to testimony as to posting $500 cash bail and how much money the defendant brought home were sustained as falling within the area of marital privilege.

The trial court correctly stated and applied the limited privilege statutorily established. The statute protects communications between spouses that are private. A communication between spouses is not "private" where a third party has access to the same information.[2]

Here the identity of present employment was known at least to such employer; the fact of receiving unemployment compensation was known to the public agency making such payments; the fact of layoff was known to the employer making the layoff. Communications by husband to wife as to these particulars do not originate in confidence nor relate to facts not equally accessible to third persons. In this state they are not privileged because they are not private.

*Sufficiency of evidence.*

Obviously and understandably, the key witness for the prosecution was the lady tavernkeeper from whom the $600 in the cigar box was stolen. Defendant, by post-

---

[1] "A husband or wife shall be a competent witness for or against the other in all cases, except that neither one without the consent of the other, during marriage, nor afterwards, shall be permitted to disclose a private communication, made during marriage, by one to the other, when such private communication is privileged. . . ." Sec. 885.18, Stats.

[2] *Truelsch v. Miller* (1925), 186 Wis. 239, 202 N. W. 352.

conviction counsel, contends that her testimony was contradictory and, therefore, an insufficient foundation for a verdict of guilt. The asserted inconsistencies are in Mrs. Osheski's testimony concerning the exact amount of money in the cigar box and the time of reporting the theft. Inconsistencies in the testimony of a particular witness go to the credibility of such witness. It is the function of the trier of fact, judge or jury, to decide which witnesses are to be believed.[3] The test, on appeal, is ". . . whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true."[4] Here the jury chose to believe the testimony of Mrs. Osheski. It had right and reason to do so. As the defendant did not take the stand and there were no other eyewitnesses, her testimony was the only testimony before the jury as to what took place in the tavern at the time of the theft. Her credibility as a witness was for the jury to determine.

*Arrest and detention.*

The defendant was arrested and placed in custody on a Saturday at a time when the courthouse in Shawano county was closed. The warrant was issued and he was brought to court and arraigned on Monday morning when the courthouse opened. To hold that this time sequence, standing alone, constituted an unreasonable detention would require counties like Shawano to staff and maintain both district attorney and magistrate services, presumably on a twenty-four hour basis, for Saturday night or Sunday arrests. We do not so hold. At a time when the securing of adequate prosecutorial and magisterial personnel is a critical problem, particularly

[3] *State v. Christopher* (1969), 44 Wis. 2d 120, 127, 170 N. W. 2d 803.

[4] *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

in smaller counties, this would contribute not to improvement but to breakdown of the administration of criminal justice.

Here no objection to the arrest or detention was made, and must be deemed waived.[5] The fact of waiver is not to be circumvented by the claim here made that failure to object constituted "incompetence" of trial counsel. It is not this court's function to second-guess the trial attorney on such election not to raise such objection.[6] If the objection had been made and sustained, the defendant would have been promptly re-arrested and re-arraigned, since jeopardy had not attached. The election to waive does not reflect upon the competence of trial counsel and involves no prejudice to the rights of this client.

*Single photo identification.*

A polaroid picture of defendant was shown by the police to Mrs. Osheski and she identified it as a picture of the defendant. Postconviction counsel contends any such solo photo identification to be inadmissible, arguing on oral argument that at least five photographs of different persons should be exhibited, the witness to select one, if any, from the five as the crime committer. The one-from-five selection may well have greater impact upon judge or jury, but that goes to weight, not admissibility.

It is argued that *Wade-Gilbert* should be read to equate showing a photograph to a witness with a police lineup where the accused is present with others, and held under certain circumstances to be entitled to the presence of counsel.[7] There is nothing in *Wade-Gilbert* to suggest

[5] *Galloway v. State* (1966), 32 Wis. 2d 414, 145 N. W. 2d 761; 147 N. W. 2d 542; *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667.

[6] *Johnson v. State* (1968), 39 Wis. 2d 415, 418, 159 N. W. 2d 48.

[7] *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.

that it is stretchable to such new outer limits. Actually, in *Wade* itself, the nation's high court listed "the identification by picture of the defendant prior to the lineup," as one of the factors that might establish that a witness' identification of defendant at trial was not the product of a lineup held without counsel being present.[8] Federal courts that have considered the issue are nearly unanimous in holding that *Wade-Gilbert* do not require presence of counsel at the time of an out-of-court photographic identification.[9]

Nor do we find merit in postconviction counsel's claim that any single photo identification is by the fact that it was shown alone rendered fatally suggestive and inadmissible. A single photo identification is not to be presumed guilty until proved innocent. The rule is: ". . . each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [10] Such rule stops far, far short of rendering all single photo identifications either inadmissible or ipso facto "impermissibly suggestive."

Once again, postconviction counsel acknowledges that no objection was raised at the time of trial to the photo identification, and, once again, claims this to establish incompetence of trial counsel. On the record here, we find no basis for such objection being sustained. Additionally, as the trial court observed, Mrs. Osheski testi-

---

[8] *Id.* at page 241.

[9] *See: United States v. Ballard* (5th Cir. 1970), 423 Fed. 2d 127; *United States v. Bennett* (2d Cir. 1969), 409 Fed. 2d 888; *United States v. Robinson* (7th Cir. 1969), 406 Fed. 2d 64; and *McGee v. United States* (10th Cir. 1968), 402 Fed. 2d 434, certiorari denied (1969), 394 U. S. 908, 89 Sup. Ct. 1020, 22 L. Ed. 2d 220.

[10] *Simmons v. United States* (1968), 390 U. S. 377, 384, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247.

fied at the preliminary hearing that the defendant had been in the tavern before with his wife, had played pool there, and that she knew him. Even if the out-of-court photo identification had been demonstrated to have been impermissibly suggestive, the in-court identification clearly was founded on earlier observations of the defendant by the witness as well as upon recognizing the photographic likeness. Trial counsel is not to be faulted for failing to make an objection that would not, on this record, have been sustained or sustainable.

*Re-enactment of crime.*

Postconviction counsel additionally claims a denial of the right to effective assistance of counsel at the time of trial in the failure to object to police officer testimony concerning a simulation of events preceding the theft by such police officer and the lady tavernkeeper witness. Where the defendant was not present, such "re-enactment" was clearly and merely a part of the investigatory phase of the case. As in the case of photo identifications, *Wade-Gilbert*[11] cannot be tortured into requiring the presence of defense counsel at such time when the witness retraces her steps on the day of the crime.

What trial counsel elected to do as to such "re-enactment" was to carefully cross-examine the police officer witness as to the time elements involved in the "re-enactment." He made the point that the doing again what the witness had done on the day of the crime depended upon her doing them at the same speed. He established that no record was made as to such speed or the time factor involved. This was extremely pertinent, in fact, vital to the obvious theory of the defense that someone else had the opportunity to come into the tavern and take the money from the cigar box.

Defendant could have argued (1) that he was not in the tavern at all or present at the time of the theft; or

---

[11] *United States v. Wade, supra; Gilbert v. California, supra.*

(2) that he was in the tavern but that he did not steal the money and someone else had the opportunity to do so. While the defendant did not take the stand in his own defense, it is clear that his trial counsel concentrated on attempting to show that part of the time involved was not accounted for, and that someone other than defendant could have come into the tavern and stolen the money. Such reliance upon such defense made the "re-enactment" of events a welcome opportunity to develop inconsistencies between the police officer and the lady tavernkeeper as to the time element involved. In fact, the officer present at the re-enactment was called to the witness stand by the defense counsel.

What postconviction counsel is in effect arguing is that trial counsel may not thus select the most persuasive theory to sustain acquittal and is required to pursue any and all roads, however uninviting, that might lead to creating doubt in the minds of the jury. This would strip from defendant and his trial counsel alike the right to elect and select a particular defense as the most maintainable. It would require hunting always with a shotgun, never with a rifle. In this case it would require trial counsel to argue to the jury (1) that his client had not been in the tavern; and (2) that, even if he had been, someone else might have taken the money. Trial counsel is not required to assert an untenable defense because postconviction counsel, predictably almost, will later claim that such defense should have been asserted. Trial counsel is not required to dilute the persuasiveness of his chosen defense by accompanying it with a defense that is inconsistent as well as untenable. If the fact is that the defendant was present, or if it is clear that the state can establish the defendant's presence at the time and place of the crime, defense counsel is not required to argue that he was not there at all. To do so at least diverts the jury's attention, perhaps leads them to con-

clude that any other defense has no more substance than the one added against the best judgment of trial counsel. Clearly this falls within the area of trial tactics,[12] and it is the considered judgment of trial counsel that makes the selection among available defenses, not the retroactive conclusion of postconviction counsel. Here the defendant was ably represented by competent trial counsel. His examination and cross-examination of witnesses concentrated upon creating a doubt as to whether the defendant had taken the money, not on whether he was in the tavern on the day in question. On Mondays it is always easy to suggest a different signal that quarterback in the weekend football game might better have called. Nevertheless, though hindsight is always 20–20, in this case it is impossible to see how a different call would have affected or changed the outcome of the game.

*By the Court.*—Judgment and order affirmed.

---

[12] *Johnson v. State, supra.*