DOZIE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 58. Argued November 6, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 369.)

210

212

For the plaintiff in error there was a brief by *Carlton Roffa* and *Charlton, Yanisch, Greco & Roffa,* all of Milwaukee, and oral argument by *Carlton Roffa.*

For the defendant in error the cause was argued by *Lee Edward Wells,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J. Was either the photographic or the courtroom identification of the defendant by the witness to the crime impermissibly suggestive or conducive to irreparable mistaken identification? That is the test.[1] While the claim of taint involves the totality of circumstances surrounding the two identifications challenged, we will deal with each individually and separately.

*Identification by photograph.*

Here the witness positively identified a photograph of the defendant as a photograph of one of the two men who held up the service station. He did so after viewing well over 500 police photographs of persons with criminal records. An identification by photograph does not require that a number of pictures be submitted from which one is selected. Such photo identification does not require a pictorial simulation of a police lineup. If the first picture exhibited had been identified by the witness as that of the holdup man, no others would be required to be exhibited. No element of per se suggestive-

---

[1] *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199. *See also: Simmons v. United States* (1968), 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247.

ness is provided by the fact of the singleness of the showing.[2] However, here the possibility of suggestiveness is clearly negatived by the selection of one needle from so large a haystack. The photographic identification was the initial identification of defendant by the witness. It was entirely proper. It follows that, even if taint were found in subsequent identifications, such photo identification being unassailable, a proper foundation can be laid for an independent in-court identification of the defendant as perpetrator of the crime.[3]

*Courtroom identification.*

On most occasions, as it was here, the misdemeanor courtroom in a large city is a sea of faces. On the afternoon here involved, it was a sea in which many fish did their swimming. They came in assorted shapes, sizes and colors. For an hour and a half, the witness observed them all, 100 to 150 individuals: Defendants, attorneys, witnesses, police officers, spectators and observers. He watched as cases were called and different individuals came and went. When the defendant appeared with his attorney, the witness immediately identified him as one of the robbers and informed a police officer of the fact of the positive identification. Thus it was after an hour and a half of observation that the witness picked one face out of the crowd, one fish from the sea. He had sat alone; he was not influenced by the presence or comments of anyone. He made a prompt and positive identification. There simply is no element of suggestiveness in the procedure followed. It is true that, unlike a prearranged lineup, the situation cannot easily be reconstructed. But it need not be to negate any suspicion of impermissible suggestiveness. No basis for such suspi-

[2] *Kain v. State* (1970), 48 Wis. 2d 212, 179 N. W. 2d 777.

[3] *See: United States v. Wade* (1967), 388 U. S. 218, 241, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149.

cion or inference exists on the procedure here followed and record here made.

*One-man lineup?*

The defendant argues that the identification of the defendant by the victim of an armed robbery, in another court and upon a collateral matter, in effect amounted to a "one-man lineup." There can no more be a one-man lineup than there can be a one-person parade or procession. The word lineup involves and requires a lining up of a number of individuals from which one of those lined up may or may not be identified as the committer of a crime. Identification by means of such prearranged police lineup is one, but only one, of the methods of identification that may be used by law enforcement authorities. Where the identifying is done by photograph, or by direct observation, of the suspect alone, or, as here, by picking the suspect out of a crowd, we deal with methods of identification that are not lineups at all under even the broadest definition of that word. If the suggestion is that the police must stage a lineup to have a proper identification of a suspect, there is no basis for any such suggestion. While direct observations or one-out-of-a-crowd identifications may not be impermissibly suggestive, they need not be made in situations simulating a prearranged police lineup. In fact, it is the absence of staging that is most reassuring on the question of possible suggestiveness.

*Discrepancies in identification.*

Emphasis is placed on certain discrepancies between the description of the robbers given after the robbery by the victim and the physical appearance of the defendant in subsequent identifications. The witness did state on the evening of the robbery that he was not sure as

to height or weight or age of the robbers. Considering the actual description of the defendant at trial and the initial description of the suspect to police to be "discrepancies," which would require some upgrading, they were credibly explained by the witness. He stated that the outer clothing worn by defendant at the crime scene made him appear heavier than he was. The witness stated that he never was a good guesser of height and weight. An average citizen is not to be held to estimating age, weight or height with the degree of accuracy expected of a weight-guesser on a carnival midway. The witness here had full opportunity to observe the defendant at the scene of the crime. He never identified another suspect, either by picture or otherwise. He did not fail to identify the defendant either by photograph or in person on any prior occasion. He positively identified the defendant's picture before making the courtroom and witness-stand identifications. Claimed discrepancies between the identifications made and the description initially given to the police, go to the weight to be given to the identifications by the jury, not to the admissibility of the identifications made.

*Presence of counsel.*

A corollary question is the entitlement to counsel under *Wade-Gilbert* [4] at the time of the identifications here made. This court has held that a person, after the issuance of a complaint and a criminal warrant for his arrest, is entitled under *Wade-Gilbert* to counsel at a police lineup, because such situation "constitutes a critical stage substantially equivalent to a post-indictment lineup in the accusatorial period of a criminal prosecution." [5] Addi-

---

[4] *United States v. Wade, supra; Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.

[5] *Hayes v. State* (1970), 46 Wis. 2d 93, 97, 175 N. W. 2d 625. *See also: Wright v. State* (1970), 46 Wis. 2d 75, 175 N. W. 2d 646; *Jones v. State* (1970), 47 Wis. 2d 642, 178 N. W. 2d 42.

tionally, this court has held that where ". . . the matter moved from a purely investigatory to an accusatorial stage," counsel was required ". . . although no complaint had been made and a warrant issued. . ." [6] Listing the factors that led it to conclude that an accusatorial stage had been reached in *Hayes*,[7] the court majority made it clear that it was not deciding ". . . that a person has a right to counsel at a lineup held during an investigatory stage of the criminal process." [8]

As to the identifications here made, both were made during purely investigatory aspects of the case. Suspicion (which falls far short of accusation) that the defendant was one of the robbers followed the identifications, and was based upon them. The defendant was in custody, but on another criminal charge, not related to the offense here involved. Here, unlike *Hayes*, the defendant was not ". . . arrested in the immediate area of the crime within an hour of the commission of the alleged crime, . . . taken to the police station and . . . subjected to a police-staged lineup. . . ." [9] None of the factors listed in *Hayes* as cumulatively persuasive that an accusatory stage had been reached are present here. The identifications here, we conclude, were made at a purely investigatory, not accusatory, stage of the proceedings.

Also, unlike *Hayes*, this case does not involve a police-staged lineup at all. Indeed, the photo identification does

---

[6] *Hayes v. State, supra,* at page 97.

[7] ". . . Here, Hayes was known by the police to be a law violator, was out on parole, expected to be arrested when apprehended, was hiding from the police, was arrested in the immediate area of the crime within an hour of the commission of the alleged crime, was taken to the police station and there subjected to a police-staged lineup. Under these facts the police lineup constituted a critical stage and Hayes was entitled to counsel. Even the police realized they had reached this stage and advised Hayes he had a right to counsel at the lineup. . . ." *Id.* at page 97.

[8] *Id.* at pages 97, 98.

[9] *Id.* at page 97.

not require the presence of the defendant. The general and accepted rule is that the *Wade-Gilbert* requirement of presence or waiver of counsel does not and should not apply to photographic identifications or the exhibiting of photographs to a witness.[10] The soundness of excluding photographic procedures from the presence of counsel requirement is made manifest by the facts of the case before us. Here well over 500 photographs were shown to the witness. Since any one of the 500-plus individuals whose photographs were exhibited might have been the one identified, would an attorney or waiver be required as to each person whose picture was shown? Would counsel be appointed to represent all possible suspects? If counsel were to be required to be present at a photographic identification, are the persons on the photographs also entitled to be present? Affirmative answers would, because of practical difficulties, effectively bar the use of photographic identifications. At staged police lineups, the presence of the defendant is required. The presence of the defendant being required, *Wade-Gilbert* requires that, at least at a certain stage in the process, the suspect's attorney also be present or such presence waived. In photographic identifications and in permitting a witness to observe a suspect on the street or in a crowded courtroom, the element of staging a situation is absent. There is neither police staging nor police control of what took place, only a police suggestion that the witness sit in a courtroom and observe what went on and who walked by. To require counsel in the instant case would be to require notice of possible identifications and counsel for all suspects in all cases. This

---

[10] *See: Simmons v. United States* (1968), 390 U. S. 377, 384, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247; *Kain v. State, supra; United States v. Ballard* (5th Cir. 1970), 423 Fed. 2d 127; *United States v. Bennett* (2d Cir. 1969), 409 Fed. 2d 888; *United States v. Robinson* (7th Cir. 1969), 406 Fed. 2d 64; *McGee v. United States* (10th Cir. 1968), 402 Fed. 2d 434, certiorari denied (1969), 394 U. S. 908, 89 Sup. Ct. 1020, 22 L. Ed. 2d 220; *United States v. Kirby* (D. C. Cir. 1970), 427 Fed. 2d 610.

would be an unreasonable requirement. Nor does it make sense that, in addition to being informed of the observation, he has a right to have an attorney with him wherever he goes when observation is likely. Notwithstanding the harassment of all suspects, something of the very unplanned naturalness of the identification would be lost if the completely unstaged observation on a one-to-one or one-out-of-the-crowd basis required prior knowledge of the suspect, consent, or presence of counsel at the time and place of the observation. As to such unplanned observations, there may be risks run but, as the United States Supreme Court said of initial identification by photograph:

". . . The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . ." [11]

So, without taking up the question of whether presence of counsel in another case on another charge constituted representation by counsel at the time of the courtroom identification, we follow *Simmons* to hold that, as to the identifications here involved, presence of counsel was not required, the sole test being whether such identifications were "impermissibly suggestive." Here we find that no element of suggestiveness is suggested by the procedures followed as to the initial identification by photograph and the subsequent identification in the crowded courtroom.

*By the Court.*—Judgment affirmed.

[11] *Simmons v. United States, supra,* at page 384.