STATE, Respondent, v. McGEE, Appellant.

*No. State 16. Argued October 8, 1971.—Decided November 2, 1971.*
(Also reported in 190 N. W. 2d 893.)

738

For the appellant there was a brief and oral argument by *L. William Staudenmaier* of Milwaukee.

For the respondent the cause was argued by *Mary V. Bowman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. January 26, 1970, at approximately 4:30 a. m., Paul Rusnak was shot through the neck while employed at an all-night restaurant in Racine, Wisconsin. He died about three weeks later. John D. Ridley, the only eyewitness produced by the state, testified that he had entered the restaurant approximately five minutes before the shooting, had eaten a bowl of

chili and was about to leave when Rusnak asked him to remain because one of the patrons had a gun. The defendant, who had been seated at the counter, stood up, moved around the end of the counter and stated he was going to shoot both men. Defendant then shot Rusnak and began firing at Ridley, who was able to run out the rear door and hide behind the restaurant until the police arrived.

On the basis of a photographic identification by Ridley, a warrant was issued for the defendant's arrest. Defendant voluntarily appeared at a police station in Ohio and was returned to Wisconsin. April 8, 1970, preliminary hearing was held. Ridley testified to the events which occurred on January 26th and identified the defendant for the first time in person. Probable cause was found and defendant was bound over for trial.

At trial, Ridley testified there were three Negro men, one wearing a white coat, and one Negro woman, seated around the southwest corner of the counter. Mary Collins, an employee of the restaurant, testified that when she left at approximately 3:30 a. m. there were four Negro persons seated at this position. One of the men was wearing a white coat, the woman had streaked blonde hair, and another one of the men was known by her to be the defendant, Eddie McGee. Ridley further testified that the defendant spoke to him briefly when he first entered the restaurant about leaving his car lights on. However, he could not remember what the defendant was wearing or whether the defendant had a mustache or a scar, but he did state that the defendant had a rough complexion.

Just prior to the shooting, there were five men in the restaurant, including Ridley and Rusnak; the woman had apparently left. Ridley was unable to state definitely where, in terms of the number of stools, he was seated in relation to the defendant, but his testimony shows he

was somewhere between three and six stools away. He did not overhear any conversation providing any reason for the shooting, such as an argument or demand for money. There was no reaction by the other two men when the shooting occurred.

A motion by defense counsel to strike the identification testimony given by Ridley was denied by the court and a request for jury instructions on the evaluation of such testimony was refused. Various postconviction motions were also heard and denied.

## Issues.

On appeal, the defendant raises four alleged errors that occurred at the trial:

(1) Refusal to strike the identification testimony;

(2) failure to instruct the jury on the evaluation of the identification testimony;

(3) instruction of the jury *sua sponte* during *voir dire* examination that the defendant was not required to testify; and

(4) failure to declare a mistrial because of certain improper statements made by the prosecuting attorney.

*Refusal to strike identification testimony.*

Ridley testified that he had only seen the defendant twice before, once at the time of the shooting and again at the preliminary hearing. Shortly after the incident, Ridley appeared at the police station where he went through a "whole file cabinet" of pictures. He picked out two mug shots from the file that could have been the gunman, neither of which were the defendant. Thereafter, an officer showed him five more pictures, from which Ridley identified a picture of the defendant as another possibility. He testified that at the time he was not completely sure which of the three was the gunman, but he was more sure that it was the defendant than either of the other two. He was not told the identity of the

persons in the photos until a complaint was sworn on February 3, 1970. He further testified that he was left completely alone while he was going through the filing cabinet and none of the five pictures subsequently shown to him were emphasized or pointed out. There is no indication that the witness was ever asked to identify the defendant in a lineup.

Following Ridley's testimony in regard to his identification of the defendant, defense counsel moved to strike the identification testimony of Ridley on the ground that the manner in which the photographs were presented to the witness was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Defense counsel pointed out that Ridley had testified at preliminary hearing that the defendant's picture was included in the first two Ridley had picked out. The court deferred hearing on the motion to a later time.

Subsequently, a *voir dire* of Ridley and police officer Donald White was held outside the presence of the jury. Ridley testified that the five pictures were given to him in one stack and there was no suggestion made in regard to any of the pictures shown to him. He could not remember any conversation with the officers at the time he was looking at the pictures. He was asked the following question:

"Q. Now when you identified Eddie McGee in this court, did you identify him from his picture, or did you identify him from seeing him before?
"A. From seeing him before.
"Q. That is the only reason you said that this is the man that was in Webbs, is because you had seen him before, is that right?
"A. Yes."

Police officer Donald White testified that he first saw Ridley at the police station on the morning of January 26, 1970. Ridley picked out two photos which he stated

looked like the gunman. White was instructed to show him five more pictures, and Ridley stated, with regard to defendant's picture, " 'This looks more like the party than any of the others.' " Detective White further testified to the following:

"A. I don't recall marking these photographs the first day when I went to the district attorney's office on the 3rd I again showed him these photographs. In fact I had six photographs at this time, including the first five, and I laid them out in front of him and I asked him if he could still identify this photograph, he again pointed to this photograph and he said, 'This is the man that had the gun.' I said, 'Are you sure that this is the man that had the gun?' He says, 'Yes.' He then made positive identification of the man's photograph. On the basis of that a warrant was issued."

The trial court ruled that the identification testimony was admissible and denied the motion. The court also permitted further examination of Ridley in the presence of the jury. Ridley testified that he could not remember what conversation took place while he was going through the five pictures handed to him by Officer White. The pictures, when handed to him, were in one stack and the witness could not remember which one was on top. The jury was allowed to examine the pictures. The prosecutor then asked Ridley if his in-court identification of the defendant was made because the witness looked at the picture. Ridley replied in the negative.

Defendant contends that the photographic display was impermissibly suggestive. In support of this contention, it is pointed out that Ridley was "shook up" when he made the initial identification; he had very little time to observe the gunman at the time of the shooting; and he failed to accurately describe the gunman or his clothing.

However, these factors are only relevant insofar as they relate to the witness' credibility or to a determina-

tion of whether the in-court identification is independent from the pretrial identification. *See: Jones v. State* (1970), 47 Wis. 2d 642, 178 N. W. 2d 42. Although the trial court initially stated the problem in terms of separating the in-court identification from a suggestive pretrial identification, the court subsequently found that the pretrial identification was not impermissibly suggestive.

Only pretrial identifications which are impermissibly suggestive carry the taint of unconstitutionality. *See: Dozie v. State* (1970), 49 Wis. 2d 209, 181 N. W. 2d 369. It must initially be determined, therefore, whether or not pretrial identifications were made under illegal circumstances. *State v. Brown* (1971), 50 Wis. 2d 565, 569, 185 N. W. 2d 323. Not all pretrial identifications are unconstitutionally tainted. In *State v. Clarke* (1970), 49 Wis. 2d 161, 169, 170, 181 N. W. 2d 355, this court took cognizance of the rule relating to photographic identifications as enunciated by the United States Supreme Court in *Simmons v. United States* (1968), 390 U. S. 377, 383, 384, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247:

" 'It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification

comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.'

"Nevertheless, the court held that photographic identification is a widely used and effective identification procedure, and it refused to make a rule prohibiting the practice. It stated, at page 384:

"'. . . each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' "

Appellant argues that the out-of-court identification was made under illegal circumstances because the photographs shown to Ridley, after he had made an initial selection, were all of persons much younger than the defendant; that Ridley had apparently passed over a picture of the defendant on his initial examination of the photos in the police file; that he was not permitted to re-examine the picture of the defendant with the two photos previously selected; and that he was not asked to participate in a lineup.

This court has held that the rule of *Simmons v. United States, supra,* does not render all single photo identifications either inadmissible or ipso facto "impermissibly suggestive," *Kain v. State* (1970), 48 Wis. 2d 212, 219, 179 N. W. 2d 777, nor does it require a pictorial simulation of a police lineup. *Dozie v. State, supra,* page 213. In the instant case, the trial court made a determination that the pretrial photographic identification was not impermissibly suggestive and, therefore, admissible in evidence. This determination was made in a *voir dire* examination of Ridley and Officer White, who was the officer that had shown Ridley the series of pictures.

The evidence adduced at this examination overwhelmingly supports the trial court's findings. The age disparity of the suspects is not apparent from an examination of the photographs. Officer White testified that Ridley made positive identification of the defendant prior to learning his identity. The defendant was not available at that time for participation in a lineup. The failure of Ridley to initially select a photo of the defendant from a police file containing hundreds of photos, or to re-examine the photo of the defendant with those previously selected, does not of itself render the procedure suggestive. *Kain v. State, supra.* Absent a finding that the photographic identification was impermissibly suggestive, we conclude it is unnecessary to determine whether the in-court identification was independent therefrom.

*Failure to instruct the jury on the evaluation of identification testimony.*

Appellant urges that the trial court erred in refusing to give the jury one of two alternative instructions submitted by defense counsel. The requested instructions were to the effect that if the jury found the pretrial photographic identification was unnecessarily suggestive, they should disregard it.

However, the admissibility of the identification testimony is a matter to be decided by the court, whereas the reliability and credibility of such testimony is a matter for the jury. *See: Foster v. California* (1969), 394 U. S. 440, 89 Sup. Ct. 1127, 22 L. Ed. 2d 402; *Brown v. State* (1965), 28 Wis. 2d 383, 137 N. W. 2d 53. In *State v. Brown* (1971), 50 Wis. 2d 565, 573, 185 N. W. 2d 323, this court adopted a procedure for determining the admissibility of an in-court identification:

"Whether the trial is to the court or to the jury, when a question is raised of an in-court identification being tainted by illegality and not of an independent origin, a *Goodchild*-type of hearing should be held, preferably before trial if the problem then arises, as it did in this case, or during trial if the issue arises at that time. When the defendant has objected to or moved to suppress an in-court identification on the ground it is tainted by the illegality of an out-of-court identification and he has proved such illegality, the state has a duty of proving the in-court identification is of an independent origin and untainted. This is not satisfied by the state's ignoring the out-of-court identification in the presentation of its case and forcing the defense to bring forth before the finder of the fact the illegality tainting the out-of-court identification. The problem is no different than those we have with tainted confessions and *Miranda* warnings in which we have adopted a hearing proceeding for determining the issue outside the presence of the jury. . . ."

In the instant case, the trial court gave the following instructions to the jury:

"In determining the weight and credit you should give to the testimony of each witness, you should consider his interest or lack of interest in the result of this trial, his conduct and demeanor on the witness stand, his bias or prejudice, if any has been shown, the clearness or lack of clearness of his recollections, his opportunity for observing and knowing the matters and things testified to by him, and the reasonableness of his testimony.
"You should also take into consideration the apparent intelligence of each witness, the possible motives for falsifying, and all other facts and circumstances appearing on the trial which tend either to support or to discredit his testimony, and then give to the testimony of each witness such weight and credit as you believe it fairly entitled to receive."

These instructions allowed the jury to properly evaluate the credibility of the identification testimony of Ridley. There was no error in refusing to allow the jury to decide whether the photographic identification was so

impermissibly suggestive so as to render the testimony inadmissible. The trial court had already made that determination. *State v. Clarke, supra,* does not require the jury to rule on the admissibility of such evidence. That case only implies that the jury may consider the circumstances surrounding the identification procedure and find that such circumstances made the identification testimony incredible and unreliable.

*Instruction of the jury as to defendant's right to remain silent.*

The trial court proceeded with a general *voir dire* examination of prospective jurors at the commencement of the trial. In connection therewith the court made the following statement:

"[*The Court:*] . . . Before I begin to question the prospective jurors I want each juror to know that we are about to enter upon the trial of a criminal action. Each juror must also understand that the defendant enters upon this trial presumed in the law to be innocent of any crime [and] that this presumption will attend him throughout the trial and will prevail at its close unless it is overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The burden of proof is upon the state. The defendant is not required to prove his innocence. Neither is the defendant under any obligation to testify in his own defense or to give any testimony whatever, although he is free to do so if he wishes. However the fact that the defendant does not testify does not constitute any admission on his part nor does it raise any presumption against him and it must not be so considered by the jury. . . ."

Three days later, after the close of all the testimony, and in response to an objection to an alleged improper remark made by the state in closing argument implying that Ridley was the only eyewitness the state was allowed, the court instructed the jury to disregard the statement, and stated:

*"The Court:* Ladies and gentlemen of the jury you are instructed to disregard that, and the statement is stricken from the record, the statement made by the state:

" 'Now John Ridley admittedly is the only eyewitness which I am allowed, and there are rules. . .'

"The court instructs you that there is evidence that there were other persons present at the time of the alleged event who could be called, and would be competent to testify to the facts concerning the alleged event."

Appellant contends that the trial court's initial instruction to the prospective jurors was of itself improper; furthermore, that the curative instruction taken in conjunction with the initial instruction at *voir dire* proceedings amounted to adverse comment on the defendant's failure to testify. We do not agree.

While it has been said that an instruction directing the jury's attention to the failure of the defendant to testify might, in some instances, do more harm than good, *Johns v. State* (1961), 14 Wis. 2d 119, 109 N. W. 2d 490; *State v. Cassel* (1970), 48 Wis. 2d 619, 180 N. W. 2d 607, and the use of admonitory instructions is a matter that should be left to the strategy of trial counsel, *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222; *State v. Cassel, supra,* this court has not held that the giving of an admonitory instruction, otherwise proper, constitutes error where the instruction has not been requested.

Furthermore, the two statements taken together do not necessarily result in adverse comment, prejudicial to the defendant. The first instruction was made during the *voir dire* of the prospective jurors in explanation by the trial judge of the burden of proof. The second instruction was made at the close of all the testimony in order to cure an improper statement made by the prosecuting attorney.

Defendant's counsel would have us read into the curative instruction an "oblique reference" by the trial

court to the defendant's failure to testify. We see this assertion as an attempt to read the curative instruction completely out of context. The trial court very properly, in the general *voir dire* instructions at the commencement of the trial, told the jury they were about to try a criminal case and that should the defendant choose not to testify it was his right to do so. Further, the jury was also instructed that if the defendant did not testify, it did not constitute an admission on his part and did not raise a presumption against him and must not be so considered by the jury.

*Improper statements in closing argument.*

Defendant argues that two statements made by the prosecuting attorney in closing argument were improper and constitute the basis for a new trial.

The first statement of the prosecutor is: ". . . I think the coroner from Kenosha says, 'Paul Rusnak you are wrong you can't be dead.' We know that he is and we know who killed him. . . ."

The rule in Wisconsin is that the opinion of counsel as to guilt of the defendant is only proper "if it is made clear that it was the evidence in the case which convinced him, not sources of information outside of the record." *State v. Bergenthal* (1970), 47 Wis. 2d 668, 682, 178 N. W. 2d 16; *Embry v. State* (1970), 46 Wis. 2d 151, 174 N. W. 2d 521. It cannot be said that this statement was based on sources of information outside the record, neither is it made clear by the prosecutor that the statement was based on evidence in the case which so convinced him.

However, defense counsel did not object to the statement at the time it was made so as to afford the trial court an opportunity to consider the objection and the advisability of a curative instruction. Also no error was claimed on motions for a mistrial. The issue is

raised for the first time on appeal. Defendant now contends that a timely objection would have served to emphasize the statement. Under such circumstances, we consider the election to be a matter of trial strategy, and assuming an objection would have been well founded, it has been waived. *State v. McDonald* (1971), 50 Wis. 2d 534, 538, 184 N. W. 2d 886; *State v. Ruud* (1969), 41 Wis. 2d 720, 726, 727, 165 N. W. 2d 153.

The second statement of the prosecutor to which our attention is directed is that referred to in our discussion of the previous issue. As to this statement by the prosecutor, the defense counsel interposed a timely objection and motion for mistrial. Hence the trial court was able to properly consider both the objection and motion for mistrial. Having done so, and upon the denial of both the objection and the motion, the trial court was then able to give the jury a curative instruction.

Cases cited by defendant in which improper comments in closing argument constituted reversible error, were situations in which the prosecuting attorney stated *facts* peculiarly within his knowledge not presented to the jury. *Ginsberg v. United States* (5th Cir. 1958), 257 Fed. 2d 950; *Nalls v. United States* (5th Cir. 1957), 240 Fed. 2d 707; *United States v. Tucker* (3d Cir. 1959), 267 Fed. 2d 212; and *Kitchell v. United States* (1st Cir. 1966), 354 Fed. 2d 715.

Therefore, we consider error, if any existed, to be harmless error. This is particularly so in view of the appropriate instruction given by the trial court.

An examination of the record in this case leads us to conclude that no probable miscarriage of justice has occurred and, therefore, a new trial in the interest of justice is unwarranted. *Commodore v. State* (1967), 33 Wis. 2d 373, 147 N. W. 2d 283.

*By the Court.*—Judgment affirmed.