HOLMES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 183.   Argued June 6, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 815.)

490

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with

whom on the brief was *Robert W. Warren*, attorney general.

CONNOR T. HANSEN, J.   On the evening of September 12, 1969, at approximately 11 p. m., two men came to the home of Mr. and Mrs. LaVerne Voss, said that they had had car trouble, and asked to use the phone. Although Mr. Voss did not recognize either of the men, he admitted them into the house and led them through the living room and into the kitchen where the phone was located. Once in the kitchen, one of the men pulled out a pistol and forced Mr. and Mrs. Voss to lie face down on the kitchen floor. While one of the men remained in the kitchen, the other searched the house for valuables but returned to the kitchen empty-handed. Mrs. Voss was then forced to accompany one of the men in a search of the house to show him the location of their valuables. This particular search lasted approximately fifteen or twenty minutes, although the two men were in the Voss home about forty-five minutes. The men cut the telephone cord and left the Voss home with Mr. and Mrs. Voss each tied and lying on their kitchen floor. Some personal property, several credit cards, and approximately $13 in cash, had been taken.

A man reported that at approximately 11 or 11:30, on the same evening, while driving home, he observed a white 1962 or 1963 Chevrolet with a loose license plate, parked in front of the Voss residence.

The following morning, September 13, 1969, officer John Porter of the Fort Atkinson, Wisconsin, police department, received a radio report from the Walworth county sheriff's department concerning the incident that had occurred at the Voss residence the night before. He was informed that the sheriff's department was seeking a white 1963 Chevrolet with loose Illinois license plates and possibly occupied by two male subjects, one with dark hair combed back and somewhat long. Some-

time later, the same day, Officer Porter observed a man with long, dark and combed-back hair driving a white 1963 Chevrolet with loose Illinois license plates. Officer Porter stopped the man, and he was held at the Fort Atkinson police station for approximately two hours. During this time, two detectives from the Walworth county sheriff's department arrived and questioned him. Before leaving, they took several color photographs of this man, later identified as defendant.

Detective Richard Ladwig, a deputy sheriff for Walworth county, testified that he contacted Mrs. Voss four or five times the week following the incident. Each time he took various pictures of different subjects which generally fit the descriptions given by the Vosses. He testified that Mrs. Voss did not make any identification from these photographs. On September 22, 1969, Detective Ladwig again went to the Voss residence to show five or six more pictures. Included in this group were two pictures of the defendant. The pictures were approximately the same size but the two of defendant were in color while the others were black and white. The pictures were shown to Mrs. Voss one at a time. The defendant's picture was the second or third shown. Mrs. Voss immediately and positively identified the defendant as one of the robbers.

Following Mrs. Voss' identification, Detective Ladwig contacted Mr. Voss at his place of employment and showed Mr. Voss the picture of the defendant. Mr. Voss also identified it as a picture of one of the robbers.

September 24, 1969, a criminal complaint was filed and a warrant issued.

October 28, 1969, following his arrest, the defendant was placed in a lineup at the Walworth county jail. Mr. and Mrs. Voss both identified the defendant as one of the men who had been in their home the evening of September 12, 1969. Defendant was represented by counsel at all times after his arrest.

February 4, 1970, the defendant pled guilty to the charge, and on February 23, 1970, was sentenced to an indeterminate term of not more than five years. February 28, 1972, pursuant to an order of the United States District Court for the Eastern District of Wisconsin, the Honorable MYRON L. GORDON, presiding, the county court of Walworth county permitted the defendant to withdraw his plea of guilty and vacated the judgment of conviction. The defendant was appointed counsel on March 10, 1972, and requested a jury trial.

The defendant filed a motion "for an Order suppressing any identification of the defendant by any witness influenced by photographic confrontation or by confrontation of defendant in the lineup held at the Walworth County Jail." Following an evidentiary hearing, defendant's motion was denied by order of the county court.

We consider the principal issues presented on this appeal to be:

1. Was the defendant denied due process of law because the pretrial photographic identification was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification?

2. Was defendant's sixth amendment rights to counsel and confrontation of witnesses violated because of the out-of-court pictorial identification of the defendant?

*Due process.*

Defendant contends that he was denied due process because the trial identification by Mr. and Mrs. Voss allegedly followed a "photographic identification procedure . . . so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." This court, in accord with the doctrine set forth in *Simmons v. United States* (1968), 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247, has held that

it is a denial of due process of law when the conduct of the identification procedures are so impermissibly and unnecessarily suggestive and conducive as to give rise to a very substantial likelihood of irreparable misidentification.[1] *Rozga v. State* (1973), 58 Wis. 2d 434, 441, 206 N. W. 2d 606; *State v. McGee* (1971), 52 Wis. 2d 736, 743, 190 N. W. 2d 893; *Quinn v. State* (1971), 50 Wis. 2d 96, 100, 183 N. W. 2d 61; *Dozie v. State* (1970), 49 Wis. 2d 209, 181 N. W. 2d 369. The defendant argues that there was in effect a chain of constitutionally tainted identifications, which commenced with an improper photographic identification; that as a result of this identification, the lineup identification was tainted; and the in-court identification was similarly tainted. Under the facts of this case we cannot agree.

The dangers inherent in photographic identification procedures have been recognized, but photographic identification, as such, has not been held per se unconstitutional. In *Simmons, supra,* at pp. 383, 384, the court stated:

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they

---

[1] *Simmons, supra,* at page 384. *See also: Stovall v. Denno* (1967), 388 U. S. 293, 302, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, wherein the court held that an identification confrontation which is "unnecessarily suggestive and conducive to irreparable mistaken identification" deprives the defendant of due process of law.

*Accord: United States v. Gambrill* (D. C. Cir. 1971), 449 Fed. 2d 1148, 1153; *United States v. Ballard* (5th Cir. 1970), 423 Fed. 2d 127, 132; *United States v. Williams* (9th Cir. 1970), 436 Fed. 2d 1166, 1169.

suspect, there is some danger that the witness may make an incorrect identification. . . .

". . .

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. . . We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. . . ."

Similarly, this court in *Rozga, supra,* at page 440, stated:

". . . The improper employment of such photographs by the police may cause the identifying witness to err and lead to a misidentification. Further, regardless of how the misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen. This thereby reduces the trustworthiness of a subsequent lineup or courtroom identification. Despite these hazards the need for both types of identification is at times necessary. . . ."

Identification by photographic viewing remains but one of the viable alternative procedures available to police authorities.[2] The validity of a photographic identification is reliant upon the particular facts of the individual case. As Mr. Justice HARLAN stated in *Simmons, supra,* at page 383, "This is a claim which must be evaluated in light of the totality of surrounding circumstances."

Even where the defendant can show that the pretrial photographic identification was impermissibly suggestive,[3] suppression of the in-court identification is not required in every instance. An impermissibly suggestive

---

[2] *Jones v. State,* ante, p. 184, 207 N. W. 2d 890.

[3] The defendant carries the burden of showing that the pretrial identification was impermissibly suggestive. *See Zdiarstek v. State* (1972), 53 Wis. 2d 420, 192 N. W. 2d 833.

photographic display gives rise to a very substantial likelihood of irreparable misidentification only if the state is unable to show, by clear and convincing evidence, that a subsequent in-court identification is based on a source independent of the photographic display.[4] This court, in *State v. Harper* (1973), 57 Wis. 2d 543, 545, 546, 205 N. W. 2d 1, citing *State v. Brown* (1971), 50 Wis. 2d 565, 569, 185 N. W. 2d 323, stated:

" 'The law is clear that an in-court identification must not be the result of an exploitation of illegality or tainted by a violation of due process of law. In the trilogy of lineup cases, *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178; and *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, the supreme court followed the test laid down in *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441, in determining the admissibility of in-court identifications following an illegal lineup or illegal confession. The *Wong* test is simply whether the evidence is acquired as the result of exploitation of illegality instead of by means sufficiently distinguishable and independent to be purged of any primary or prior taint of illegality. *See State v. Schneidewind* (1970), 47 Wis. 2d 110, 118, 176 N. W. 2d 303. Consequently, although there may be an illegal out-of-court identification, if the in-court identification can stand independently of such an out-of-court identification, it is admissible.' "

Two inquiries are relevant in determining whether, under *Simmons, supra,* a defendant has been denied due process of law because of a pretrial photographic identification: (1) Whether the pretrial photographic display, itself, was impermissibly suggestive, and (2) if so, whether there is nevertheless an independent source for the in-court identification.[5] The defendant has the burden to show the former, but the state has the burden to demonstrate the latter.

---

[4] *See: United States v. Gambrill, supra.*
[5] *See: United States v. Gambrill, supra,* at page 1153.

The record reveals that when Detective Ladwig went to see Mrs. Voss on September 22, 1969, he had two color photographs of the defendant and three or four black and white pictures of about the same size. He found Mrs. Voss in the yard and said he had some more pictures for her to see. He showed them to her in sequence, one at a time. The second or third one he showed was immediately and without hesitation identified by Mrs. Voss as one of the men. This procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." No element of per se suggestiveness is provided by the fact of the singleness of the showing.[6] Nor is the fact that defendant's picture was colored, as opposed to black and white, significant.[7] In addition, the disparity between the number of black and white pictures to colored pictures is of less significance than defendant's argument would suggest, since, under the facts of this case, Mrs. Voss was first shown one or two black and white photographs and then defendant's colored photograph. At the time she made her selection, she had not seen the other black and white pictures. Mrs. Voss was alone when she saw the photographs. There is nothing in the record to suggest that Detective Ladwig made any suggestive remarks. Notwithstanding cross-examination, Mrs. Voss never displayed any doubt about her identification of the defendant.[8] Under the facts of this case, it cannot be said that the pretrial photographic display from which Mrs. Voss identified the defendant was impermissibly suggestive.

[6] *Dozie v. State, supra; Kain v. State* (1970), 48 Wis. 2d 212, 179 N. W. 2d 777.

[7] It could as easily be argued that the standard black-and-white "mug shot" raises an inference of criminality and suggestiveness. *See: United States v. Robinson* (7th Cir. 1969), 406 Fed. 2d 64.

[8] In *Simmons, supra,* at page 384, the court said: "The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. . . ."

The record indicates that Mr. Voss was just shown one or both of the pictures of the defendant, and that he also immediately and without hesitation identified defendant as one of the men. To be sure, dangers inherent in the use of photographic representations are increased when pictures of only a single individual resembling the suspect are viewed. However, this court has held that the rule of *Simmons, supra,* does not render all single photo identifications either inadmissible or ipso facto "impermissibly suggestive." [9] Under the facts of the case, Mr. Voss' identification was neither inadmissible nor impermissibly suggestive.

The pretrial photographic displays were not, in and of themselves, impermissibly suggestive; therefore, it is unnecessary for this court to determine whether an independent source for the in-court identifications exists. However, we do observe that such an independent source existed. In discussing the factors that should be considered by the court in determining whether an out-of-court identification impermissibly tainted or influenced the in-court identification, this court, in *State v. Harper, supra,* at page 546, stated:

"In *Jones v. State* (1970), 47 Wis. 2d 642, 178 N. W. 2d 42, and *State v. Schneidewind, supra,* we stated, relying on *United States v. Wade, supra,* and *Gilbert v. California, supra,* that certain factors should be considered by the court in determining whether the out-of-court identification impermissibly tainted or influenced the in-court identification. Among these factors are the prior opportunity to observe the alleged defendant dur-

---

[9] *Jones, supra; McGee, supra.* In *Kain, supra,* at page 218, this court stated: "A Polaroid picture of defendant was shown by the police to Mrs. Osheski and she identified it as a picture of the defendant. Postconviction counsel contends any such solo photo identification to be inadmissible, arguing on oral argument that at least five photographs of different persons should be exhibited, the witness to select one, if any, from the five as the crime committer. The one-from-five selection may well have greater impact upon judge or jury, but that goes to weight, not admissibility."

ing the criminal act, any discrepancy between the pre-trial description and the defendant's actual description, the identification of the defendant by picture prior to lineup, the failure to identify the defendant on prior occasions, and the lapse of time between the alleged act and the lineup identification." [10]

Here, Mr. and Mrs. Voss were in the defendant's presence for approximately forty-five minutes. He wore no mask. They observed him in their well-lighted home. At trial, both Mr. and Mrs. Voss positively testified that their in-court identifications were made from the opportunity they had to observe the defendant in their home.[11] Mr. and Mrs. Voss made their identifications from the photograph displays only ten days after the incident. Throughout numerous occasions they never expressed any doubt, and, although they were shown numerous photos before defendant's photo, there was no misidentification. The state has shown, through clear and convincing evidence, that an independent source for the Vosses' in-court identifications existed. Therefore, even if it could be said that suggestiveness existed as to the photographic identification, the basis for the Vosses' in-court identification was "by means sufficiently and distinguishable . . . purged of the primary taint." *State v. Harper, supra; United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441.

*Right to counsel and confrontation of witnesses.*

Defendant contends that the out-of-court identification of the defendant through photographs violated his sixth

[10] Similar factors are enumerated in *United States v. Johnson* (D. C. Cir. 1971), 452 Fed. 2d 1363, 1369.

[11] While a witness' statement as to his source of identification is not determinative, *United States v. Gambrill, supra,* it is, none-theless, entitled to some weight.

amendment right to counsel and right to confront the witnesses against him. Defendant analogizes the decisions of United States Supreme Court in *United States v. Wade, supra,* and *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178. In *Kirby v. Illinois* (1972), 406 U. S. 682, 683, 92 Sup. Ct. 1877, 32 L. Ed. 2d 411, the United States Supreme Court summarized its earlier decisions in the following manner:

"In *United States v. Wade,* 388 U. S. 218, and *Gilbert v. California,* 388 U. S. 263, this Court held 'that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup.' *Gilbert v. California, supra,* at 272. Those cases further held that no 'in-court identifications' are admissible in evidence if their 'source' is a lineup conducted in violation of this constitutional standard. . . ."

A majority of the courts that have ruled on this question have held that the rationale of *Wade, supra,* applies only where the defendant is present and confronted by a witness and is inapplicable to photograph viewings and identifications.[12] This court is in accord. In *Kain, supra,* at pages 218, 219, this court stated:

[12] *See: United States v. Mojica* (2d Cir. 1971), 442 Fed. 2d 920; *United States v. Collins* (4th Cir. 1969), 416 Fed. 2d 696; *United States v. Ballard, supra; United States v. Serio* (6th Cir. 1971), 440 Fed. 2d 827; *United States v. Fowler* (9th Cir. 1971), 439 Fed. 2d 133; *United States v. Williams, supra; United States v. Van Roeder* (10th Cir. 1970), 435 Fed. 2d 1004; *People v. Wesley* (1970), 10 Cal. App. 3d 902, 89 Cal. Rptr. 377; *People v. Martin* (1970), 47 Ill. 2d 331, 265 N. E. 2d 685; *Commonwealth v. Geraway* (1969), 355 Mass. 433, 245 N. E. 2d 423.

The United States Supreme Court, in *United States v. Ash* (decided June 21, 1973), 93 Sup. Ct. 2568, 37 L. Ed. 2d

"It is argued that *Wade-Gilbert* should be read to equate showing a photograph to a witness with a police lineup where the accused is present with others, and held under certain circumstances to be entitled to the presence of counsel. There is nothing in *Wade-Gilbert* to suggest that it is stretchable to such new outer limits. Actually, in *Wade* itself, the nation's high court listed 'the identification by picture of the defendant prior to the lineup,' as one of the factors that might establish that a witness' identification of defendant at trial was not the product of a lineup held without counsel being present. . . ."

In addition, the photographic identification took place September 22, 1969, two days before the criminal warrant was issued or the criminal complaint filed. The United States Supreme Court has recently held that the *Wade-Gilbert* per se exclusionary rule does not extend to identification testimony that takes place before a defendant is indicted or otherwise formally charged. In *Kirby v. Illinois, supra,* at pages 688–690, the United States Supreme Court stated:

"In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama,* 287 U. S. 45, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. *See Powell v. Alabama, supra; Johnson v. Zerbst,* 304 U. S. 458; *Hamilton v. Alabama,* 368 U. S. 52; *Gideon v. Wainwright,* 372 U. S. 335; *White v. Maryland,* 373 U. S. 59; *Massiah v. United States,* 377 U. S. 201; *United States v. Wade,* 388 U. S. 218; *Gilbert v. California,* 388 U. S. 263; *Coleman v. Alabama,* 399 U. S. 1.
"This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The *Powell* case makes clear that the right at-

619, has held that the sixth amendment does not grant the right to counsel at post-indictment photographic displays conducted by the government for the purpose of allowing a witness to attempt an identification of the offender.

taches at the time of arraignment, and the Court has recently held that it exists also at the time of a preliminary hearing. *Coleman v. Alabama, supra*. But the point is that, while members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—*whether by way of formal charge, preliminary hearing, indictment, information, or arraignment*.

"...

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. *See Powell v. Alabama,* 287 U. S., at 66–71; *Massiah v. United States,* 377 U. S. 201; *Spano v. New York,* 360 U. S. 315, 324 (DOUGLAS, J., concurring).

"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. Less than a year after *Wade* and *Gilbert* were decided, the Court explained the rule of those decisions as follows: 'The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the *prosecution,*" and that a post-indictment lineup is such a "critical stage."' (Emphasis supplied.) *Simmons v. United States,* 390 U. S. 377, 382–383. We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." (Emphasis added.) [13]

---

[13] In *Jones v. State* (1973), *supra,* this court considered *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625, and the more

The defendant further argues that the police authorities should have held an in-custody, corporeal, lineup, attended by counsel, at the Fort Atkinson police department on September 13, 1969, and that only if such a lineup is a physical impossibility, are the police free to use other methods to gain that identification.

Defendant's argument is rejected. There is yet no court decision holding a lineup constitutionally required. This court, in *Dozie, supra,* at page 215, stated:

". . . Identification by means of such prearranged police lineup is one, but only one, of the methods of identification that may be used by law enforcement authorities. Where the identifying is done by photograph, or by direct observation, of the suspect alone, or, as here, by picking the suspect out of a crowd, we deal with methods of identification that are not lineups at all under even the broadest definition of that word. If the suggestion is that the police must stage a lineup to have a proper identification of a suspect, there is no basis for any such suggestion. . . ." [14]

Defendant's sixth amendment rights to counsel and confrontation of witnesses have not been violated by the pictorial pretrial identification of defendant in the absence of counsel.

Defendant also contends that the taking of his photograph at the Fort Atkinson police department constituted an illegal seizure of evidence. This issue is raised for the first time by the defendant in his reply brief on this appeal. It was not a part of his pretrial motion to suppress the photographic identification or his motion for a new trial. Furthermore, because of the defendant's failure to raise this issue in the trial court, the factual

recent decision of the United States Supreme Court in *Kirby v. Illinois, supra.*

[14] *See also: Jones v. State, supra,* wherein this court stated: "If the suggestion was that the police here were required to stage a lineup, that was clearly in error."

record of what transpired at the Fort Atkinson police department on September 13, 1969, is meager. Therefore, this issue is not before this court on appeal and we consider it to be improperly raised for the first time by defendant in his reply brief.[15] Also, we have previously determined that the state has shown, through clear and convincing evidence, that an independent source existed for the in-court identification by Mr. and Mrs. Voss.

We are also of the opinion that the evidence in this case was sufficient to prove the defendant guilty of the crime charged beyond all reasonable doubt. On review in a criminal case, the test of the sufficiency of the evidence has been stated many times and is " '. . . whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt . . . .' " *Lampkins v. State* (1971), 51 Wis. 2d 564, 577, 187 N. W. 2d 164; *State v. Laabs* (1968), 40 Wis. 2d 162, 172, 161 N. W. 2d 249; *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725. In the case before us, the state has met the test.[16]

Finally, the defendant asks for a new trial in the interest of justice pursuant to sec. 251.09, Stats. The motion is primarily based upon what the defendant refers to as "inherently unreliable" identification evidence. We do not share the defendant's opinion of the identification evidence. We find no error in the instructions given by the trial court on the identification issue. It cannot be said that the identification of the defendant by Mr. and Mrs. Voss was impermissibly suggestive or tainted.

[15] *See: Bullock v. State* (1972), 53 Wis. 2d 809, 193 N. W. 2d 889; *Farley v. State* (1971), 50 Wis. 2d 113, 183 N. W. 2d 33; *State v. Escobedo* (1969), 44 Wis. 2d 85, 170 N. W. 2d 709; *McLaughlin v. State* (1966), 32 Wis. 2d 124, 145 N. W. 2d 153, certiorari denied, 389 U. S. 862, 88 Sup. Ct. 117, 19 L. Ed. 2d 130.

[16] In addition, this issue was not presented to the trial court and, therefore, is not properly raised on appeal. *State v. Schneidewind* (1970), 47 Wis. 2d 110, 176 N. W. 2d 303.

Their testimony as to the identification of the defendant was positive and unwaivering and established, beyond a reasonable doubt, that the defendant was one of the men who robbed them.

*By the Court.*—Judgment and order affirmed.