# COURT OF APPEALS
# DECISION
# DATED AND FILED

## February 27, 2025

**Samuel A. Christensen**
**Clerk of Court of Appeals**

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1521-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2020CF41**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

TYLER D. ZIMMERMAN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Clark County: DANIEL S. DIEHN, Judge. *Affirmed.*

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Tyler D. Zimmerman appeals a judgment of conviction for two counts of second-degree recklessly endangering safety and one count of substantial battery as well as an order denying his motion for postconviction relief. Zimmerman argues that he is entitled to withdraw his no-contest pleas to these crimes because his trial counsel provided ineffective assistance by failing to adequately investigate and pursue self-defense as a theory in representing him against the charges. In the alternative, Zimmerman argues that he is entitled to a new trial in the interest of justice or a modification of his sentence.

¶2 We conclude that Zimmerman is not entitled to withdraw his no-contest pleas based on ineffective assistance of counsel because he has not proven that trial counsel's strategic decision to pursue an accident defense, as opposed to self-defense, was an unreasonable trial strategy and therefore deficient. We also conclude that Zimmerman is not entitled to a new trial in the interest of justice or sentence modification. Therefore, we affirm.

## BACKGROUND

¶3 The following facts are undisputed unless otherwise noted and are derived from a combination of sources, including evidence provided at the *Machner* hearing.[1]

---

[1] "A *Machner* hearing is '[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case.'" *State v. Domke*, 2011 WI 95, ¶20 n.5, 337 Wis. 2d 268, 805 N.W.2d 364 (citation omitted); *see also State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶4    On April 10, 2020, the date of the incident that resulted in the criminal convictions at issue here, Zimmerman and A.B. had been in a four-year "off and on" romantic relationship and shared an infant son ("the child").[2] Zimmerman frequently worked out of town, but, on April 10, Zimmerman was at a cabin with two friends, Jamie Krohn and Bo Huss, cutting down trees and drinking beer.  A neighbor who lived by the cabin, Randy Sebesta, was also periodically present on the property that afternoon picking up felled logs.  For her part, A.B. was working at a new job and had asked Zimmerman to be available that day if needed to pick up the child at day care because he had recently had a medical procedure that could spike a fever.  Late in the morning, A.B. received a communication from the child's daycare that he had a fever and needed to be picked up.  A.B. subsequently sent a series of text messages to Zimmerman indicating that the child needed to be picked up and expressing increased frustration at Zimmerman's nonresponse.  After A.B. picked up the child around 4:30 p.m., Zimmerman eventually responded to A.B.'s text messages, requesting that A.B. bring food to the cabin and providing her with directions to the cabin. A.B. drove to the cabin with the child.

¶5    There is no dispute that, when A.B. arrived at the cabin, she was upset with Zimmerman for not picking up the child.  Huss, the owner of the cabin, attempted to keep A.B. out of the cabin by locking the door, but A.B. managed to enter the cabin.  Zimmerman alleged that A.B. was yelling and screaming.  At some point, A.B. left the child in the cabin, then went outside and retrieved

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2023-24), we refer to the victim using initials that do not correspond to her actual name.  All subsequent references to the Wisconsin Statutes are to the 2023-24 version unless otherwise indicated.

3

Zimmerman's truck keys so he could not drive while intoxicated. Zimmerman then went outside while holding the child and got into a bulldozer he had brought to the property. A.B. and Zimmerman provide different accounts of the events that followed.

¶6 A.B. alleges the following. Zimmerman used the bulldozer to pile brush in front of A.B.'s car and push A.B.'s car and the brush out of the driveway and into the middle of the street. A.B. captured part of this incident on video. After Zimmerman pushed A.B.'s car into the street, he exited the bulldozer, picked up the handle of a pipe wrench that was in his truck and, while still holding the child, threw the pipe wrench through the back window of A.B.'s car. Zimmerman walked back into the cabin with the child. When A.B. entered the cabin, Zimmerman, who was no longer holding the child, grabbed A.B. by her pony tail and dragged her face-down out of the cabin. Once outside, Zimmerman kicked her in the face with his steel-toed boots, which resulted in swelling, bleeding, and bruising around her eye. A.B. then retrieved the child, gave Zimmerman his keys, and drove away.

¶7 Zimmerman's account provided to his trial counsel differed from A.B.'s as follows. Zimmerman got into the bulldozer with the child in his arms so that he could move a tree that was blocking the driveway. While he was in the bulldozer, A.B. grabbed a heavy metal hand tool from Zimmerman's truck and began hitting Zimmerman's truck with the tool. When Zimmerman exited the bulldozer, A.B. threw the tool at him but missed and the tool hit the back window of her own car. As Zimmerman was walking back to the cabin with the child, A.B. began yelling and punching Zimmerman's back. When Zimmerman reached the cabin, he handed the child to Krohn, who was sitting near the doorway. As Zimmerman turned around, A.B. grabbed him and they both fell onto a metal grate

4

on the ground that was outside the doorway and onto some brush that had been cut down earlier that day. A.B. suffered a scratch on her face from falling onto the metal grate and brush.

¶8 Meanwhile, law enforcement received a call from A.B.'s mother and were dispatched to a residence to check on the welfare of A.B. When the officers arrived at the residence, A.B. was getting out of her car, and they observed that A.B. had significant swelling below her right eye, a line of blood running down her right cheek, a slight limp, and injuries to her hands. While police were talking with A.B., she pulled a piece of a chipped tooth out of her mouth. Officers also observed that the back windshield of A.B.'s car was shattered and that there was a wrench in the backseat, which A.B. identified as the wrench that Zimmerman had thrown through the back window of her car. A.B. alleged that she had been the victim of violence by Zimmerman on two or three prior occasions.

¶9 A.B. sought medical care and later reported that she had a broken orbital bone in her eye socket and potentially a broken or displaced kneecap. A.B. also required dental and orthodontic care to repair her two fractured teeth that resulted from the incident.

¶10 Zimmerman was arrested the day after the incident. In interviews with law enforcement, Zimmerman denied seeing A.B. the previous day and said that A.B.'s allegations of what happened were not true.

¶11 Zimmerman was charged with the following crimes: first-degree recklessly endangering A.B.'s safety; aggravated battery; second-degree recklessly endangering safety of the child; stalking; criminal damage to property; and disorderly conduct. Each offense was charged as a repeater and, except for the

second-degree recklessly endangering safety charge concerning the child, all offenses were charged as acts of domestic abuse.

¶12 Zimmerman did not timely respond to a plea offer made by the district attorney and chose to proceed to trial. The district attorney amended the information to add an additional charge of second-degree reckless injury.

¶13 As discussed in more detail below, trial counsel prepared for trial by meeting with Zimmerman on several occasions, discussing various trial strategies with him (including a potential self-defense theory), reviewing discovery, and speaking with eyewitnesses. Trial counsel filed a list of potential trial witnesses that named Krohn, Huss (with no address indicated), and Sebesta (the neighbor who picked up the logs). Trial counsel also filed motions in limine and a list of proposed jury instructions, none of which mentioned an intent to assert the privilege of self-defense.

¶14 On the morning that the trial was scheduled to commence, trial counsel conferred with Zimmerman to discuss Zimmerman's options. Trial counsel told Zimmerman that, if Zimmerman proceeded to trial, trial counsel believed that Zimmerman would be found guilty on all of the charges. Trial counsel solicited a final plea offer from the district attorney that was not as advantageous to Zimmerman as the plea offer that Zimmerman had previously rejected. The circuit court delayed jury selection and gave Zimmerman additional time to confer with counsel to consider the most recent offer. When the court reconvened, Zimmerman indicated that he had not made a final decision about the most recent offer. The court proceeded to address trial preparations with the parties when Zimmerman interrupted to indicate that he would accept the most recent plea offer.

¶15    After Zimmerman further consulted with counsel and completed a plea questionnaire, the court conducted a plea colloquy with Zimmerman and accepted Zimmerman's no-contest pleas to the following:  an amended charge of second-degree recklessly endangering A.B.'s safety as a repeater and as an act of domestic abuse; substantial battery as a repeater and as an act of domestic abuse; and second-degree recklessly endangering the child as a repeater.  Zimmerman faced a maximum of 29 and one-half years of imprisonment.  The court sentenced Zimmerman to a total of 12 years of imprisonment, consisting of six years of initial confinement and six years of extended supervision.

¶16    Zimmerman brought a postconviction motion to withdraw his pleas, alleging that his trial counsel had been ineffective in failing to investigate and pursue self-defense as a trial strategy, which Zimmerman claimed forced him on the morning of trial to accept an unfavorable plea bargain.  In pertinent part, Zimmerman argued that trial counsel should have filed a *McMorris* motion to introduce testimony from witnesses who had observed A.B. behave aggressively towards Zimmerman, including by slapping and punching Zimmerman on prior occasions, and should have made a pretrial request for a self-defense jury instruction.[3]  In the alternative, Zimmerman argued that he was entitled to sentence modification because his sentence was unduly harsh.

¶17    The circuit court scheduled a *Machner* hearing, at which trial counsel testified as follows about his investigation and the evidence he considered

---

[3] Under *McMorris v. State*, 58 Wis. 2d 144, 152, 205 N.W.2d 559 (1973), the circuit court may admit "opinion and reputation evidence and evidence of the victim's prior violent acts known to the defendant under limited circumstances" when a defendant is charged with an assault or homicide and the defendant has introduced a factual basis for a self-defense claim. *State v. Daniels*, 160 Wis. 2d 85, 108, 465 N.W.2d 633 (1991).

in formulating a trial strategy. Trial counsel had discussed a potential self-defense theory with Zimmerman and counsel believed that he could have raised self-defense. Trial counsel was aware that both Zimmerman and A.B. had been charged with prior crimes in domestic abuse incidents towards family members and other romantic partners and that each of the two had made allegations of domestic abuse against the other.[4] However, counsel determined that pursuing a self-defense theory would not be successful because each of the following facts and circumstances would undermine such a theory: (1) Zimmerman's account of the incident and Zimmerman's other acts of domestic abuse, some of which the circuit court determined would be admissible at trial; (2) aspects of the accounts of the available eyewitnesses, Krohn and Sebesta (both of whom trial counsel had subpoenaed to testify at trial); and (3) self-defense would not apply to all of the crimes with which Zimmerman was charged, including stalking and second-degree recklessly endangering safety concerning the child. Therefore, trial counsel concluded that a self-defense theory was inferior to and inconsistent with pursuing a defense of accident. Under the accident theory, trial counsel planned to argue that A.B.'s injuries were caused accidentally in the "general melee" of the fight, and not because Zimmerman used force against A.B. in order to terminate an actual or imminent unlawful interference with his person.

---

[4] Trial counsel had a printout of A.B.'s prior criminal charges, each of which involved misdemeanor crimes against a member of A.B.'s family or A.B.'s prior boyfriend, and trial counsel reviewed a criminal complaint filed against A.B. in one of the cases. However, whether A.B. was convicted of these charges is not in the appellate record for this case.

Trial counsel testified that he also had a written statement of an individual, Allan Binder, who stated that, approximately one week before the incident here, Binder observed A.B. slap Zimmerman on the head six times. Binder also stated, however, that Zimmerman had told another friend that Zimmerman had "punch[ed]" A.B. in the face during the incident charged in this case.

¶18    The circuit court denied Zimmerman's motion, concluding, in part, that Zimmerman had failed to show by clear and convincing evidence that trial counsel made decisions that fell below an "objective standard of reasonableness" under the facts and circumstances of the case, constituting deficient performance under the constitutional standard. The court also implicitly denied Zimmerman's motion for a sentence modification. Zimmerman appeals.

## DISCUSSION

¶19    On appeal, Zimmerman argues that he is entitled to withdraw his no-contest pleas because trial counsel provided constitutionally ineffective assistance of counsel in failing to investigate and advance a self-defense theory. Zimmerman also requests that we exercise our discretion to order a new trial in the interest of justice pursuant to WIS. STAT. § 752.35. Finally, Zimmerman argues that he is entitled to a sentence modification. We address and reject each argument in turn.

### I.  Ineffective Assistance of Counsel

#### A.  Governing Legal Principles and Standard of Review

¶20    A defendant is entitled to withdraw a plea after sentencing "only upon a showing of 'manifest injustice' by clear and convincing evidence." *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). One way that a defendant can demonstrate a manifest injustice is if the defendant was denied the effective assistance of counsel. *Id.* Whether a defendant was denied effective assistance of counsel involves questions of law and fact. *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be

overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." ***Id.***

¶21 To demonstrate that trial counsel's assistance was ineffective, Zimmerman has the burden of showing by clear and convincing evidence that counsel's performance was deficient by falling below an "objective standard of reasonableness" and that the deficient performance was prejudicial because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***State v. Carter***, 2010 WI 40, ¶¶22, 37, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting ***Strickland v. Washington***, 466 U.S. 668, 688, 694 (1984)). We need not address both prongs if one prong is dispositive. ***Id.***, ¶36.

¶22 With respect to the deficiency prong, there is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance." ***Id.***, ¶22 (citation omitted). "[C]ounsel's performance need not be perfect, nor even very good, to be constitutionally adequate." ***Id.*** We must also make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." ***Id.*** (citation omitted).

¶23 When trial counsel has articulated a reasonable trial strategy, we will not second-guess that strategy unless it was "based on an irrational trial tactic or based upon caprice rather than upon judgment." ***Breitzman***, 378 Wis. 2d 431, ¶65 (citation omitted). "Even if, in hindsight, selecting a particular defense appears to have been unwise, counsel's decision does not constitute deficient performance if it was reasonably founded on the facts and law under the circumstances existing at

the time the decision was made." ***State v. Snider***, 2003 WI App 172, ¶22, 266 Wis. 2d 830, 668 N.W.2d 784.

¶24 The duty to investigate is one aspect of effective representation. ***State v. Pico***, 2018 WI 66, ¶22, 382 Wis. 2d 273, 914 N.W.2d 95. If trial counsel has conducted a "thorough investigation of law and facts relevant to plausible options," then trial counsel's strategic choices are "virtually unchallengeable." ***Strickland***, 466 U.S. at 690. A strategic decision may still be reasonable even if it was made after a less than complete investigation of law and facts. ***Carter***, 324 Wis. 2d 640, ¶23. This is because trial counsel has a duty "to make reasonable investigations *or to make a reasonable decision that makes particular investigations unnecessary*." ***Id.*** (emphasis added) (quoting ***Strickland***, 466 U.S. at 691). As with other strategic decisions, we assess the reasonableness of trial counsel's failure to conduct certain investigations in light of "all the circumstances." ***Id.*** (quoting ***Strickland***, 466 U.S. at 691).

## B. Legal Principles of Self Defense

¶25 As noted, Zimmerman argues that trial counsel performed deficiently in not sufficiently investigating and not pursuing a self-defense theory at trial. Under Wisconsin law, a defendant may threaten or intentionally use force against another if (1) "the defendant believed that there was an actual or imminent unlawful interference with the defendant's person"; (2) "the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference"; and (3) "the defendant's beliefs were reasonable." ***State v. Stietz***, 2017 WI 58, ¶11, 375 Wis. 2d 572, 895 N.W.2d 796; *see* WIS. STAT. § 939.48(1). If a defendant raises the privilege of self-defense and produces "some evidence" in support of that privilege, ***Stietz***, 375 Wis. 2d 572,

¶16, then the burden shifts to the State to prove at trial the absence of self-defense beyond a reasonable doubt, *State v. Austin*, 2013 WI App 96, ¶12, 349 Wis. 2d 744, 836 N.W.2d 833. Additionally, in cases of assault or homicide, if the court determines that a defendant has presented a sufficient factual basis for a claim of self-defense, the defendant may "establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence" towards the defendant or others "within [the defendant's] knowledge at the time of the incident." *McMorris v. State*, 58 Wis. 2d 144, 152, 205 N.W.2d 559 (1973); *State v. Head*, 2002 WI 99, ¶138, 255 Wis. 2d 194, 648 N.W.2d 413.

## C. Deficient Performance

¶26 Zimmerman specifically argues that trial counsel's performance was deficient because he failed to investigate self-defense, failed to move to introduce *McMorris* evidence of A.B.'s alleged prior violent acts of which Zimmerman was aware, and failed to request a jury instruction on self-defense. According to Zimmerman, if trial counsel had taken these actions, then counsel could have argued persuasively to the jury that Zimmerman pushed A.B. while acting in self-defense, causing A.B. to fall and hit her face on the metal grating and brush outside the cabin doorway.[5] Zimmerman also contends that trial counsel's

---

[5] Zimmerman does not specify in his appellate briefing whether his argument is that trial counsel should have pursued a self-defense theory that would allow him to challenge all of Zimmerman's pending criminal charges, or only some of them. Instead, Zimmerman focuses on the applicability of self-defense to explain the injuries that A.B. sustained, which resulted in Zimmerman's aggravated battery charge. Zimmerman does not develop any argument that he could have used a self-defense theory to defend against the other criminal charges, namely the first and second-degree reckless endangerment charges, stalking, criminal damage to property, disorderly conduct, and second-degree reckless injury. Additionally, we note that *McMorris* evidence may be introduced only when a defendant is charged with a form of physical assault or a homicide. *State v. Jackson*, 2014 WI 4, ¶83, 352 Wis. 2d 249, 841 N.W.2d 791. We therefore focus our discussion of Zimmerman's deficient performance claim in the context of whether trial counsel should have pursued a self-defense theory in defending the aggravated battery charge.

deficient performance was prejudicial because, if counsel had pursued self-defense, his defense would have been stronger, he would not have entered a plea, and he likely would not have been convicted.[6] For its part, the State argues that trial counsel made a reasonable strategic decision to not advance a self-defense theory because that theory would have been inconsistent with Zimmerman's version of events, was not supported by the available evidence, and would have conflicted with trial counsel's accident defense.

¶27 For the following reasons, we conclude that Zimmerman has not met his burden of showing by clear and convincing evidence that trial counsel's decision to pursue an accident theory instead of a self-defense theory fell below an "objective standard of reasonableness" and was therefore deficient. Because our conclusion that Zimmerman has not proven deficient performance is dispositive of his ineffective assistance of counsel claim, we do not address the prejudice prong.

### 1. Zimmerman's Representations and Conduct

¶28 The central reasons that trial counsel identified for not pursuing a self-defense theory were Zimmerman's representations to trial counsel and third parties about the events that occurred on the day of the incident as well as Zimmerman's prior domestic violence convictions regarding two previous

---

[6] Zimmerman also argues that trial counsel's decision to forgo a self-defense argument was unreasonable because trial counsel said that self-defense would have required more effort by counsel to raise. In support, Zimmerman points to a portion of trial counsel's testimony in which he said: "[Self-defense] could have been presented. But I think it would have not been successful, and I think it would have resulted in multiple convictions. It was difficult to successfully assert that defense." We disagree with Zimmerman's interpretation of trial counsel's testimony. When read in context, trial counsel was saying that self-defense would be "difficult" to argue because it was not well-supported by the evidence, not because it required more effort to raise.

romantic partners.  We begin by summarizing Zimmerman's representations to trial counsel.

¶29    There is no dispute that A.B. was angry with Zimmerman on the day of the incident for not picking up the child and that she initiated the interaction that escalated into the incident resulting in Zimmerman's convictions. Zimmerman provided trial counsel with oral and written accounts in which he stated that A.B. fell down and injured herself in a melee after she initiated a physical fight or, alternatively, that A.B.'s injuries were self-inflicted.  But, trial counsel testified further that Zimmerman was "never … willing to indicate he had actually worked the injury as contact upon [A.B.] … while defending himself," meaning that Zimmerman never told counsel that Zimmerman had used force against A.B. and injured her in the course of defending himself.  Trial counsel also testified that, while Zimmerman wanted to highlight A.B.'s alleged "combative personality," Zimmerman wanted to do so only to show that A.B. was capable of violent behavior, not that Zimmerman in fact acted in self-defense—*i.e.*, that he caused her injury in the course of trying to defend himself.  As noted above, the privilege of self-defense requires proof that the use of force was intentional and necessary to terminate unlawful interference with the defendant's person, *see Stietz*, 375 Wis. 2d 572, ¶11, and Zimmerman asserted neither of those elements in his representations to counsel of what occurred.  It undermines the claim of deficient performance that trial counsel reasonably relied on Zimmerman's narrative in assessing the strength of a potential self-defense theory and in deciding not to further investigate or otherwise pursue it.  *See Strickland*, 466 U.S. at 691 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

¶30 Trial counsel was also aware of Zimmerman's prior statements about the incident as recorded in police reports and in video evidence, which counsel testified further weakened a self-defense claim. According to the criminal complaint, Zimmerman told two different law enforcement officers in separate interviews that neither A.B. nor the child was present at the cabin the day of the incident, that A.B.'s vehicle had been damaged in an accident with a deer, and that the last time he saw the vehicle the back window was intact. Zimmerman denied "putting his hands" on A.B. When a law enforcement officer asked Zimmerman how he would respond to the existence of a video depicting Zimmerman driving a bulldozer with the child on his lap on the day of the incident, Zimmerman responded that someone must have altered the date or time stamp of the video. When asked about the last time Zimmerman had seen A.B. and the child, however, Zimmerman responded that it had been the day of the incident, contradicting his prior statement that he had not seen A.B. that day. One potential reasonable inference from these inconsistent statements was obvious, and it was an inference that trial counsel had to worry about: Zimmerman lied about these things because he had assaulted A.B., and he had no self-defense evidence to offer. That was of course not the only possible reasonable inference, but it supported trial counsel's testimony that Zimmerman's assertions that he was not at the scene of the alleged crimes clashed with a trial strategy that Zimmerman was there and merely defended himself from A.B. Zimmerman does not respond on appeal to trial counsel's concern about reconciling Zimmerman's inconsistent statements with a self-defense theory.

¶31 Additionally, Zimmerman's representations to trial counsel that A.B. sustained her injuries after accidentally falling to the ground and scraping her face, or, alternatively, from self-infliction, conflicted with the physical evidence. As

15

trial counsel testified, "[A.B.'s] orbital fracture and dental issues … were inconsistent with the scraped face on such an iron grating." According to trial counsel, the physical evidence indicated to him that A.B.'s facial injuries were caused by blunt force trauma. Zimmerman does not respond on appeal to trial counsel's concern that Zimmerman's account of the incident did not square with the physical evidence.

¶32 Trial counsel also testified that Zimmerman's prior acts of domestic violence further weakened a self-defense claim. The State successfully moved pretrial for an order permitting it to offer "other acts" evidence of Zimmerman's domestic violence against a girlfriend and his former wife. This other acts evidence included an incident in which Zimmerman allegedly hit his girlfriend in the jaw and the back of the head while she was lying in the fetal position on the floor. This evidence also included two other incidents involving his former wife in which Zimmerman allegedly strangled her, grabbed her arm, and damaged her vehicle. Trial counsel testified that he viewed these other acts as being similar in nature to the charges against Zimmerman in the present case and would have undermined Zimmerman's credibility at trial. Zimmerman does not respond on appeal to trial counsel's concern that the "other acts" evidence of domestic abuse that was admissible at trial would undermine Zimmerman's credibility.

¶33 Given Zimmerman's conduct and representations to trial counsel described above, Zimmerman did not plan to testify at trial, according to trial counsel. Although trial counsel recognized that this decision could change as the trial progressed, trial counsel estimated that, without Zimmerman's testimony, it would be more difficult to introduce evidence of self-defense, including *McMorris* evidence. As discussed above, the admission of *McMorris* evidence is conditioned on establishing what was known to the defendant and the manner in

which this knowledge affected the defendant's assessment of the need to use force, under the self-defense standard, during the incident. Trial counsel estimated that these limitations further reduced the likelihood of a self-defense theory being successful at trial.

## 2. Other Eyewitness Accounts

¶34 It further supports trial counsel's strategy that there were no pretrial eyewitness statements to support Zimmerman's assertion that he acted in self-defense. In other words, there was no eyewitness available to testify at trial who corroborated an assertion that Zimmerman reasonably and necessarily used force against A.B. to prevent imminent harm to himself. Indeed, as discussed next, trial counsel testified that the statements of the available eyewitnesses to the incident—*i.e.*, Krohn and Sebesta—did not provide persuasive support for a self-defense theory.

¶35 First, Krohn's credibility was undercut by his self-reported excessive drinking on the day of the incident and his numerous inconsistent pretrial statements. Specifically, during two separate interviews with law enforcement in April 2020 and during a conversation with trial counsel, Krohn said that he had consumed eighteen beers on the day of the incident and that he was too drunk to remember the incident. Krohn's self-reported excessive drinking was seemingly confirmed by Sebesta, who said that Krohn was so intoxicated around the time of the incident that Krohn fell out of his chair. Krohn also said that he did not recall seeing A.B. at the cabin. However, in a March 30, 2022 interview with law enforcement one week before trial, Krohn took the position that he had been lying in his previous interviews. Moreover, Krohn's statements do not support Zimmerman's assertion that he used force to defend himself against A.B. Krohn

17

stated in his March 2022 interview that A.B. and Zimmerman simply tripped and fell on a metal grate, not that Zimmerman pushed A.B. or otherwise used force to defend himself. Indeed, Krohn's March 2022 account was more consistent with the accident theory pursued by defense counsel than a self-defense theory. In other words, Krohn, as the only available eyewitness to at least observe some of the incident, did not provide support for a self-defense theory, but an accident theory.

¶36 Similarly, Sebesta's pretrial statements do not provide strong support for a self-defense theory. In his pretrial interview, Sebesta stated that he had heard yelling and a woman crying from inside the cabin and had seen a woman with blood running down her cheek holding a child in her arms. Sebesta said that he heard the woman say that Zimmerman had pushed her down, but he said that he did not witness Zimmerman push the woman.

¶37 In regards to Bo Huss, the third person who was present at the cabin and a witness to a portion of the incident, he was not interviewed by the police. Although Huss was named on trial counsel's potential witness list, there was no address provided. When trial counsel asked Zimmerman to help him locate Huss, counsel testified that Zimmerman responded that he did not want Huss "brought in" to court because Huss had an outstanding warrant and would be arrested. Given Zimmerman's own statements to trial counsel about Huss, Zimmerman fails to show by clear and convincing evidence that Huss could be found by trial counsel or that trial counsel was deficient in failing to locate Huss. *See Strickland*, 466 U.S. at 691 (counsel's failure to pursue investigations because of defendant's assertion that such a pursuit could be fruitless or harmful cannot be later challenged as unreasonable).

¶38    Simply put, neither Zimmerman's pretrial narrative to counsel nor any of the pretrial statements of Krohn or Sebesta persuasively supported a theory that A.B.'s injuries were caused by Zimmerman acting in self-defense.  Given the weaknesses in Zimmerman's narrative and the other eyewitness accounts with respect to self-defense, it was not deficient performance for trial counsel to focus his trial strategy on an accident theory in which he would argue that A.B.'s injuries were caused by accident, after A.B. initiated a physical fight that resulted in a "melee."  In other words, trial counsel made a strategic decision from his perspective at the time that this approach faced a better chance of success.  *See Carter*, 324 Wis. 2d 640, ¶23 ("[C]ounsel has a duty to make reasonable investigations *or to make a reasonable decision that makes particular investigations unnecessary*." (emphasis added; citation omitted)).

### 3.  Pursuing Both Self-Defense and Accident Theories Would Have Been Inconsistent

¶39    Trial counsel testified that, in his view at the time of trial, raising a self-defense argument would have conflicted with trial counsel's preferred accident defense.  The accident theory required trial counsel to argue that the fight was a chaotic and tumultuous scene that was initiated by A.B. and that, at some point during the resulting fracas, A.B. sustained her injuries in an accidental fall.  By contrast, a self-defense argument would have required trial counsel to argue that Zimmerman intentionally but reasonably used force against A.B. for the purpose of preventing or terminating what Zimmerman believed to be an unlawful interference with his person by A.B.  *See* WIS. STAT. § 939.48(1).  Arguing that A.B.'s injuries were caused by Zimmerman intentionally using force against A.B. while acting in self-defense would have been contradictory to the argument that A.B.'s injuries occurred accidentally in the chaos of a fight.  Further, trial counsel

testified that a self-defense theory provided an inconsistent narrative to explain the other charges Zimmerman faced.

¶40     It is well-established that trial counsel "may select a particular defense from available alternative defenses and is not required to present the jury with alternatives inconsistent with the chosen defense." *Snider*, 266 Wis. 2d 830, ¶22.  In other words, "[t]rial counsel is not required to dilute the persuasiveness of his chosen defense by accompanying it with a defense that is inconsistent as well as untenable." *Kain v. State*, 48 Wis. 2d 212, 221, 179 N.W.2d 777 (1970). Presenting conflicting or contradictory defenses "diverts the jury's attention, perhaps lead[ing] them to conclude that any other defense has no more substance than the one added against the best judgment of trial counsel." *Id.* at 221-22.

¶41     Zimmerman argues that there is nothing inconsistent with advancing parallel defenses of accident and self-defense.  Although our supreme court has recognized that, in some factual scenarios, it is consistent to pursue both self-defense and accident theories, *State v. Watkins*, 2002 WI 101, ¶44, 255 Wis. 2d 265, 647 N.W.2d 244, this case is not one of those scenarios.  Here, as explained above, arguing self-defense would have been factually inconsistent with arguing accident.

¶42     In sum, trial counsel adopted one reasonable strategy, which was to forgo a self-defense argument in favor of an argument that A.B.'s injuries were caused unintentionally and accidentally in the chaos of the fight that she initiated. Although self-defense was a different theory arguably available to the defense, trial counsel testified that he chose a strategy that he estimated had a greater chance of success.  *See Kain*, 48 Wis. 2d at 221 (holding that counsel is not required "to pursue any and all roads, however uninviting, that might lead to

20

creating doubt in the minds of the jury"). Accordingly, Zimmerman has failed to demonstrate by clear and convincing evidence that defense counsel acted unreasonably in making a strategic decision to pursue a defense counsel reasonably concluded had a better chance of success at trial.

## II. New Trial in the Interest of Justice

¶43 Zimmerman argues that he is entitled to a new trial in the interest of justice pursuant to WIS. STAT. § 752.35. Under this statute, this court has the discretion to order a new trial if "the real controversy has not been fully tried" or if "it is probable that justice has for any reason miscarried." Sec. 752.35. "Our discretionary reversal power is formidable, and should be exercised sparingly and with great caution." *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. Our discretionary reversal power "should be used only in *exceptional* cases." *State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258.

¶44 Zimmerman argues that he is entitled to a new trial because the evidence of A.B.'s history of domestic violence presented at the *Machner* hearing shows that Zimmerman was merely "the victim of yet another of [A.B.'s] attacks." According to Zimmerman, trial counsel prevented the jury from considering this evidence because he failed to investigate or otherwise pursue the privilege of self-defense. We are not persuaded, for reasons we have explained. Also, the circuit court conducted a colloquy with Zimmerman confirming that he knowingly and voluntarily decided to accept the plea deal. Simply because Zimmerman now asserts that he would have had a greater chance of success under a different trial strategy does not warrant a new trial under WIS. STAT. § 752.35. For these

reasons, we conclude that this is not an "exceptional" case requiring discretionary reversal.

### III. Sentence Modification

¶45 Finally, Zimmerman argues that he is entitled to sentence modification because his 12-year imprisonment sentence is "unduly harsh."[7] According to Zimmerman, the circuit court failed to consider the evidence of A.B.'s alleged history of domestic violence presented at the *Machner* hearing when imposing his sentence. We are not persuaded.

¶46 A circuit court has the authority to modify a sentence that is "unduly harsh or unconscionable." *State v. Cummings*, 2014 WI 88, ¶71, 357 Wis. 2d 1, 850 N.W.2d 915. "A sentence is unduly harsh or unconscionable 'only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" *Id.*, ¶72 (citation omitted). A sentence that is "well within" the statutory limits is unlikely to be unduly harsh or unconscionable. *Id.*, ¶74.

¶47 Whether the sentence imposed was unduly harsh and unconscionable presents a question that we review for an erroneous exercise of discretion. *State v.*

---

[7] Zimmerman also argues on appeal that he is entitled to sentence modification because his sentence is "unreasonable" and "illogical." However, as the State correctly points out, Zimmerman argued in his postconviction motion only that his sentence was "unduly harsh." Assuming without deciding that these additional arguments have a legal footing, we do not consider Zimmerman's new arguments for sentence modification because they were not raised in the circuit court. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal.").

*Grindemann*, 2002 WI App 106, ¶30, 255 Wis. 2d 632, 648 N.W.2d 507. We will uphold a court's discretionary decision if it "applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach." *Id.*

¶48 Here, Zimmerman was convicted of one count of substantial battery as a repeater and as an act of domestic abuse, as well as two counts of recklessly endangering safety as a repeater, with one of those counts being charged as an act of domestic abuse. In imposing the sentence summarized above, which was well within the maximum imprisonment sentence that could have been imposed, the circuit court thoroughly explained the basis for its decision, emphasizing Zimmerman's lengthy history of domestic violence and the need to protect the community. Because Zimmerman's sentence is well within the statutory limits and the court explained the basis for its decision, we conclude that Zimmerman is not entitled to sentence modification.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.